CLERK'S OFFICE U.S. DISTRICT COURT
AT ROANOKE VA. - FILED

**JUL 1 1 2008**

JOHN F. CORCORAN, CLERK
BY: _____ DEPUTY CLERK

| | | |
|---|---|---|
| JULIE S. KIRK, | ) | Civil Action No. 7:07cv00263 |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | |
| | ) | By:  Hon. Michael F. Urbanski |
| | ) | United States Magistrate Judge |
| JO ANNE B. BARNHART, | ) | |
| Commissioner of Social Security, | ) | |
| **Defendant.** | ) | |

## MEMORANDUM OPINION

Plaintiff Julie S. Kirk ("Kirk") brought this action pursuant to 42 U.S.C. § 1383(c)(3), incorporating 42 U.S.C. § 405(g), for review of the final decision of the Commissioner of Social Security denying the claim for Kirk's disability insurance benefits ("DIB") and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act ("Act").  The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on the Commissioner's motion for summary judgment and Kirk's motion to remand.

On this appeal, Kirk argues that the Commissioner erred by: 1) concluding that her depression is not a severe impairment; 2) finding that her lumbar and spine impairment does not meet listing 1.04B; 3) finding that she can perform a range of light work; and 4) concluding that she can return to several of her prior occupations, and thus, is not disabled.  Having reviewed the record, and after briefing and oral argument, the court finds that substantial evidence supports the Commissioner's conclusion that Kirk is not disabled.  As a result, defendant's motion for summary judgment must be granted and this appeal dismissed.

# I.

Judicial review of a final decision regarding disability benefits under the Act is limited to determining whether the ALJ's findings "are supported by substantial evidence and whether the correct law was applied." Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (citing 42 U.S.C. § 405(g)). Accordingly, a reviewing court may not substitute its judgment for that of the ALJ, but instead must defer to the ALJ's determinations if they are supported by substantial evidence. Id. Substantial evidence is such relevant evidence which, when considering the record as a whole, might be deemed adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971). If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays, 907 F.2d at 1456; Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966).

The Commissioner employs a five-step process to evaluate DIB claims. 20 C.F.R. §§ 404.1520, 416.920; see also Heckler v. Campbell, 461 U.S. 458, 460-462 (1983). The Commissioner considers, in order, whether the claimant: 1) is working; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of a listed impairment; 4) can return to his or her past relevant work; and if not, 5) whether he or she can perform other work. Id. If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, he does not proceed to the next step. Id. Once the claimant has established a prima facie case for disability, the burden then shifts to the Commissioner to establish that the claimant maintains the residual functioning capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform alternative work that

2

exists in the local and national economies.  42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

## II.

Kirk was thirty-one years old on the date she filed her application for benefits and has a high school education.  (Administrative Record ("R.") at 75, 107)  Prior to her alleged onset of disability, Kirk worked as a production inspector/tester, retail sales clerk, nanny, and cashier/deli attendant.  (R. 102, 903)  Kirk protectively filed applications for DIB and SSI on December 5, 2003, alleging that she became disabled on November 27, 2001.  (R. 78-80, 843-45)  Her applications were denied initially and upon reconsideration.  (R. 47-51, 54-56, 847-51, 853-55)  Kirk then requested an administrative hearing, which was held on January 31, 2006.  (R. 57, 870-908)

Based on the testimony presented at the administrative hearing, including that of an vocational expert ("VE"), the Administrative Law Judge ("ALJ") determined that Kirk is not disabled within the meaning of the Act.[1]  (R. 16-22)  At step one of the disability evaluation process, the ALJ found that Kirk had not engaged in substantial gainful activity since her alleged onset date of disability.  (R. 18)  At steps two and three, the ALJ found that Kirk's lower back pain, secondary to obesity and lumbar degenerative disc disease with left L5 radiculopathy and mild disc bulging at the L5-S1 level is a severe impairment, although not severe enough to meet or equal the listing requirements in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. 18-20)  The ALJ also concluded that Kirk's mental depression is not a severe impairment.  (R. 19)

---

[1] With respect to Kirk's claim for DIB, the ALJ found that Kirk acquired sufficient quarters of coverage to remain insured through December 31, 2006.  Thus, in order to be entitled to DIB, Kirk must establish disability on or before December 31, 2006.  (R. 14)

3

Before proceeding to step four, the ALJ found that Kirk retains the RFC to perform a range of light work[2] that involves no climbing of ladders, ropes, or scaffolds; only occasional stooping, kneeling, crouching or crawling; and limited pushing and pulling in the lower extremities. (R. 20-22) In making this assessment, the ALJ determined that Kirk's statements about the intensity, duration, and limiting effects of her pain and symptoms were not fully credible based upon the medical evidence. (R. 21-22) At step four of the analysis, the ALJ determined that Kirk is capable of performing her past relevant work as a production inspector/tester, retail sales clerk, and cashier deli attendant, as Kirk actually performed these positions and as they are generally performed in the national economy. (R. 22) Accordingly, the ALJ concluded that Kirk was not under a disability between November 27, 2001 and the date of the ALJ's decision, June 26, 2006. (R. 22)

The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied Kirk's request for review. (R. 7-10) Kirk now appeals that decision to this court.

### III.

Kirk argues that the Commissioner's decision is not supported by substantial evidence. In support of her argument, she contends that the Commissioner erroneously concluded that: 1) her depression is not a severe impairment; 2) her lumbar and spine impairment does not meet or equal listing 1.04B; 3) she retains the RFC to perform light work; and 4) she can return to her

_____

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. A job performed in this category requires a good deal of walking or standing, or involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 416.967, 404.1567.

4

prior occupations as inspector/tester, retail sales clerk, and cashier deli attendant. These contentions will be addressed in turn.

## A.

Kirk first contends that her mental depression meets the criteria of listing 12.04, and thus, the Commissioner erred in concluding that her mental depression is not severe. An impairment is severe if it significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a), 416.921(a). When a claimant alleges disability due to a mental condition, the Commissioner must follow the technique set forth in 20 C.F.R. §§ 404.1520a and 416.920a. Using this technique, the ALJ must first evaluate the claimant's pertinent symptoms, signs, and laboratory findings to determine whether the claimant has a medically determinable mental impairment.

If the ALJ determines that a claimant has a medically determinable mental impairment, the ALJ must specify the symptoms, signs, and laboratory findings that substantiate the presence of the impairment. 20 C.F.R. §§ 404.1520a(b)(1), 416.920a(b)(1). The ALJ must then rate the degree of functional limitation resulting from the impairment. 20 C.F.R. §§ 404.1520a(b)(2), 416.920a(b)(2). The ALJ's "written decision must incorporate the pertinent findings and conclusions based on the technique," as well as show the "significant history, including examination and laboratory findings, and functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s)." 20 C.F.R. §§ 404.1520a(e)(2), 416.920a(e)(2). The decision must also include a specific finding as to the degree of limitation in each of four broad functional areas: activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation. Id.

5

In this case, the ALJ first found that the medical record evidences the existence of mental depression. The ALJ next concluded that Kirk's mental impairment was not severe because her depression did not satisfy the "A," "B," or "C" criteria of listing 12.04. In making this determination, the ALJ adopted the findings of a Psychiatric Review Technique performed on July 26, 2004 by Eugene Hamilton, Ph.D., a state agency medical consultant, because the ALJ found that Dr. Hamilton's opinion was consistent with and supported by the great weight of the documentary evidence. (R. 790-802) In the Psychiatric Review Technique, Dr. Hamilton concluded that Kirk's depression was not severe because it did not result in at least two of the "B" criteria: her depression created no restriction of activities of daily living or repeated episodes of decompensation, each of extended duration, and created only mild difficulties in maintaining social functioning and in maintaining concentration, persistence, or pace. (R. 790, 800) A second state agency medical consultant, E. Hugh Tenison, Ph.D., reviewed the medical record and concurred with Dr. Hamilton's opinion. (R. 790)

The Commissioner's conclusion that Kirk does not meet the criteria of listing 12.04 is supported by substantial evidence. The record indicates that Kirk is able to care for her school-aged children and baby, prepare meals, perform household chores, shop, pay bills, administer medications, perform personal care, and talk on the phone. (R. 165-71) The record also indicates that Kirk has a history of depression that seems to respond well to counseling therapy and medication. On May 10, 2002, Kirk was evaluated by psychiatrist, L. Douglas Balke, M.D., who noted that Kirk reported a long period of feeling depressed during which she experienced symptoms such as frequent crying, irritability, low energy, and occasional thoughts of not

6

wanting to go on, but without any suicidal plan or intent. (R. 369) Dr. Balke diagnosed Kirk with severe major depression and a GAF of 50.[3]

Kirk received counseling treatment from Botetourt Counseling from May 2, 2003 until March 9, 2004. During her initial evaluation, Kirk was diagnosed as having major depressive disorder and a GAF of 60.[4] (R. 755) Progress notes from this period, however, indicate that Kirk's status improved with the passage of time. Specifically, with the exception of three visits, Kirk was consistently assessed as having a GAF of 70 or above, a score indicating that she had "mild symptoms" but "generally function[ed] pretty well." DSM-IV, at 32. (R. 747-55) Additionally, during the course of Kirk's counseling treatments, her therapist frequently described her symptoms using phrases such as "mood is improved," "in no acute distress," "more stable," and "affect is cheerful." (R. 747-55) As of March 9, 2004, Kirk was described as "doing better," and rather than scheduling a return appointment, was advised to return on an as needed basis. (R. 747)

On October 6, 2003, Kirk was seen by Jitendra S. Desai, M.D. for evaluation and treatment of her depression. Upon examination, Dr. Desai found that Kirk had no suicidal ideations, but was depressed and anxious. Dr. Desai diagnosed Kirk with major depression that was severe and recurrent, dependent personality disorder, and a GAF of 50, and restarted her on

---

[3] A GAF score of 50 corresponds to "serious symptoms" but is only one point below the range for "moderate symptoms," such as flat affect and occasional panic attacks. Diagnostic & Statistical Manual of Mental Disorders ("DSM-IV") 32 (4th ed. 1994).

[4] A GAF of 60 corresponds to "moderate symptoms," such as flat affect and occasional panic attacks. DSM-IV, at 32.

Wellbutrin, which "she did well with three years ago when she was treated for depression." (R. 398)

Kirk does not contest the evidence reviewed by the ALJ, Dr. Hamilton, and Dr. Tenison, nor does she contest the weight given to this evidence. Rather, she argues that treatment notes dated after the ALJ's decision support a conclusion that her depression is severe and satisfies the criteria of listing 12.04 and thus, that the court should remand the decision to the Commissioner for consideration of these treatment notes. A remand on the basis of new evidence is warranted if such evidence is: 1) new, 2) material, and 3) relates to the period on or before the date of the ALJ's decision. Wilkins v. Sec'y of the Dep't of Health and Human Services, 953 F.2d 95-96 (4th Cir. 1991). Evidence is new if it is neither duplicative nor cumulative and is material if "there is a reasonable possibility that the new evidence would have changed the outcome." Wilkins, 953 F.2d at 96 (citing Borders v. Heckler, 777 F.2d 954, 956 (4th Cir. 1985)).

The new evidence relied upon by Kirk indicates that she received inpatient treatment at Memorial Hospital of Martinsville ("Martinsville") for severe, major depression on June 27, 2006, just one day after the ALJ announced his opinion. Following discharge from Martinsville, Kirk received outpatient counseling treatment with Piedmont Regional Mental Health Services ("Piedmont") from June 28, 2006 through November 8, 2006. She also received inpatient treatment from Roanoke Rehabilitation on November 7, 2006 for severe depression and suicidal ideation. After consideration of the new evidence, the court concludes that the new evidence does not warrant remand because it is neither material, nor does it relate to the period on or before the date of the ALJ's decision.

8

In terms of the analysis under <u>Wilkins</u>, the court first notes that the evidence of Kirk's inpatient treatment at Martinsville is not material. Kirk's treatment records from her hospitalization at Martinsville indicate that her symptoms had increased in severity because she had stopped taking her medication, and that she had stopped taking her medication because her primary care physician would not prescribe the medications she wanted her to prescribe. An individual will not be considered legally disabled if they fail to comply without good cause with a treatment program that would restore her ability to work. 20 C.F.R. §§ 404.1530, 416.930. Failure to comply with treatment because one's physician will not prescribe desired medications certainly does not qualify as "good cause." <u>See</u> <u>id.</u> (listing examples of good reasons for not following treatment).

The court next notes that the new evidence does not relate to the period on or before the ALJ's decision. Although the ALJ's decision was issued just one day prior to Kirk's hospitalization at Martinsville and within months of the notes from Piedmont and Roanoke Rehabilitation, there is no indication in the 700+ pages of the existing medical record that Kirk's depression had reached the severity that Kirk maintains is evidenced by the new treatment notes. Rather, the record, as outlined above, indicates that Kirk's depression remained stable through the use of counseling treatment and medication. While it may be now that her mental state has deteriorated to such an extent as to prevent all forms of work activity, the new evidence sheds no light on her condition prior to the date of the ALJ's decision. In such circumstances, Kirk's proper course is to file new applications for DIB and SSI benefits.

9

Kirk next argues that the Commissioner erred by finding that her lumbar and spine

impairment does not meet or equal Listing 1.04B. The Listing of Impairments describes

impairments that are "severe enough to prevent an individual from doing any gainful activity,

regardless of his or her age, education, or work experience." 20 C.F.R. §§ 404.1525(a),

416.925(a). Kirk asserts that she meets Listing 1.04B, disorders of the spine because her pain is

so severe that she must change position more than once every two hours. In order to meet listing

1.04B, a claimant must have: 1) a disorder of the spine, resulting in compromise of a nerve root

(including the cauda equina) or the spinal cord and 2) spinal arachnoiditis,[5] as confirmed by an

operative note, pathology report of a tissue biopsy, or appropriate medically acceptable imaging,

that is manifested by severe burning or painful dysesthesia and results in the need to change

position more than once every two hours. 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.04B.

The Commissioner's conclusion that Kirk does not meet Listing 1.04B is supported by

substantial evidence. There is no evidence that Kirk's back impairment compromises the nerve

root or spinal cord. To the contrary, an MRI performed of Kirk's lumbar spine on November 26,

2001 revealed only "mild degenerative changes of the L5-S1 intervertebral disc with rather small

left paracentral disc protrusion." (R. 363) An MRI performed on April 24, 2002 revealed no

changes from the November, 2001 examination. Moreover, after reviewing the results from this

MRI, her treating physician, George Chaconas, M.D., noted: "her MRI is normal so I think she

will be able to work." (581-82) Additionally, an x-ray of Kirk's lumbar spine performed on

---

[5] "[S]pinal arachnoiditis is a condition characterized by adhesive thickening of the arachnoid which may cause intermittent ill-defined burning pain and sensory dysesthesia." 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 1.00K(2).

April 28, 2004 showed a narrowing of the L5-S1 interspace, which, as her treating physician, Henry Ivey, M.D. noted, was a minor degenerative change consistent with patients of her age. (775, 777)   Thus, Kirk does not meet the first criteria of Listing 1.04B.

Kirk likewise fails to meet the second criteria of Listing 1.04B, as the record is devoid of a diagnosis of spinal arachnoiditis, nor does it contain confirmation of such an impairment by an operative note or pathology report.  Rather, Kirk's physicians have consistently diagnosed her with lumbar degenerative disc disease and lumbar radiculopathy.  (R. 563, 606-07, 768, 771, 775, 828)  Kirk's argument that her lumbar spine impairment causes such severe pain that she must change position more than once every two hours is thus irrelevant to the question of whether she meets Listing 1.04B, because such a need must arise from arachnoiditis.  Accordingly, substantial evidence supports the Commissioner's finding that Kirk's lumbar spine impairment does not meet Listing 1.04B.

## C.

Kirk's third argument is that the Commissioner improperly concluded that she retains the RFC to perform light work because she is unable to stand, walk, or sit for six hours of an eight-hour work day, and is unable to lift weights, stoop, kneel, crouch, crawl, or push/pull in the lower extremities, due to her low back pain.  A claimant's RFC is the most work a claimant can still do, despite her impairment and any related symptoms, such as pain.  20 C.F.R. §§ 404.1545(a), 416.945(a).  In assessing a claimant's RFC, the ALJ considers all relevant medical and other evidence.  Id.

Pursuant to the social security regulations, allegations of pain and other subjective symptoms must be supported by objective medical evidence.  20 C.F.R. §§ 404.1529, 416.929.

11

The regulations set forth a two-step process for evaluating symptoms such as pain. First, there must be an underlying medically determinable physical impairment that could reasonably be expected to produce the individual's pain or other symptoms. Craig v. Chater, 76 F.3d 585, 593 (4th Cir. 1996) (discussing 20 C.F.R §§ 404.1529, 416.929). Once established, the intensity, persistence, and limiting effects of the individual's symptoms must be evaluated to determine the extent to which they limit the claimant's ability to do basic work related activities. Id. at 595. In making this finding, the ALJ must determine the credibility of the claimant's statements based on consideration of the entire record. 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4). A claimant's "symptoms of pain need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which that impairment can reasonably be expected to cause the pain the claimant alleges she suffers." Craig, 76 F.3d at 594. In this case, the ALJ found that Kirk's impairments could produce some of her alleged symptoms, but that her statements regarding the intensity, duration, and limiting effects of her symptoms, including pain, are not fully credible because they are not supported by the medical evidence. The objective evidence of record supports the ALJ's conclusion.

Kirk visited with Dr. James Vascik, M.D., a neurologist, on October 20, 2004 for evaluation of both her back pain and numbness of the right leg and foot. (R. 782) Dr. Vascik concluded that Kirk's examination was essentially benign, in that there was no pain with closed fist percussion over her lumbar lordotic curve, she could walk on her heels and toes, could extend 30 degrees and forward flex to touch the floor with outstretched fingers, could straight leg raise without pain at 90 degrees of elevation while supine, had no sensory loss or weakness, and had a normal MRI. Dr. Vascik concluded that Kirk did not need surgery and recommended an

12

evaluation with pain management to see if they could assess her pain and discover an ancillary cause. (R. 782-83)

Kirk met with Dr. G. Montgomery Baylor, a pain management specialist with Comprehensive Pain Management Centers, for a consultation on January 26, 2005. Dr. Baylor concluded that most of Kirk's symptoms seemed to be discogenic and radicular in nature, although he found that Kirk's symptoms did not correspond to her mild disc bulge at L5-S1. (R. 828) Dr. Baylor attempted to perform provocative discography on February 15, 2005, but Kirk demonstrated pain behavior that was incongruent with any known physiology for discogenic pain, making the discogram invalid. (R. 825) Kirk continued to receive treatment from Dr. Baylor, including epidural steroid injection and medication, until September 7, 2005. On that date, there was a discussion about Kirk receiving Lortab from both the pain center and from Dr. Ivey. Kirk was told that because her actions violated her responsibility agreement, the pain center would not continue to write pain prescriptions for her, although they would provide her with a referral for a surgical workup. She declined the referral and informed the pain center that she would not return. (R. 814)

Finally, following a review of Kirk's medical record and activities of daily living, state agency physicians completed Physical RFC Assessments. Dr. Randall Hays, M.D. completed a Physical RFC Assessment on July 23, 2004, in which he concluded that Kirk did not have a severe impairment because the severity of her alleged symptoms was disproportionate to the expected severity and duration of her medically determinable impairments. Specifically, Dr. Hays noted that Kirk had mild degenerative disc disease, normal physical examinations, and daily activities that were not significantly limited in relation to her alleged symptoms. (R. 761)

13

A second Physical RFC Assessment was completed on November 10, 2004. The state agency physician concluded that Kirk's alleged symptoms were only partially credible, and that she retained the RFC to perform medium work, but could never climb ropes or scaffolds, and could only occasionally stoop and crouch. (R. 784-89) Notably, no treating, examining, or reviewing medical source has opined that Kirk is more physically limited than the state agency physicians found her to be.

The ALJ adopted the findings of the state agency physicians because they were consistent with the objective evidence of record, but gave Kirk the benefit of the doubt by reducing her RFC to light work. 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) (stating that a medical opinion is entitled to great weight when that opinion is consistent with the record as a whole). The objective medical evidence, opinion evidence, and Kirk's various activities of daily living support the conclusion that she retains the RFC to perform light work, despite her low back pain.

## D.

Kirk's final argument is that the Commissioner improperly concluded that she could return to her prior work as an inspector/tester, retail sales clerk, and cashier/deli attendant because she performed these jobs at the medium, rather than light, exertional level. A claimant is "not disabled" if she retains the RFC to do her past relevant work. 20 C.F.R. §§ 404.1560(b)(3), 416.960(b)(3). Kirk's argument that she performed her past relevant work at the medium exertional level is contradicted by her disability paperwork, in which she indicated that the heaviest weight she lifted was less than ten pounds as a cable inspector/tester, ten pounds as a retail sales clerk, and twenty pounds as a cashier/deli attendant. (R. 112-16) Even if she had performed these positions at a medium exertional level, however, the Regulations provide that a

14

claimant is not disabled if she can perform her previous work as she performed it or as it is generally performed in the national economy. 20 C.F.R. §§ 404.1560(b)(2), 416.960(b)(2); Social Security Ruling 82-61; Social Security Ruling 82-62. At the administrative hearing, the VE testified that the occupations of inspector/tester, retail sales clerk, and cashier/deli attendant are generally performed in the national economy at the light exertional level. Further, the VE testified that a hypothetical claimant with Kirk's RFC could perform these positions at the light exertional level. (R. 903-05) For these reasons, substantial evidence supports the ALJ's conclusion that Kirk retains the ability to perform her past relevant work.

## IV.

The Commissioner's findings that Kirk's depression is not a severe impairment, her lumbar spine impairment does not meet listing 1.04B, she can perform a range of light work, and she can return to several of her prior occupations is amply supported by the evidence of record. Again, it is not the province of the court to make disability determinations or to re-weigh the evidence in this case. Rather, the court's role is to determine whether the Commissioner's decision is supported by substantial evidence. Considering that the Supreme Court has defined substantial evidence to be more than a mere scintilla and somewhat less than a preponderance, Pierce v. Underwood, 487 U.S. 552, 565 (1988), Richardson v. Perales, 402 U.S. at 401, it is clear that the evidence in the record in this case meets the substantial evidence standard.

Accordingly, the court affirms the final decision of the Commissioner and grants the defendant's motion for summary judgment. In affirming the final decision of the Commissioner, the court does not suggest that Kirk is free of all pain, discomfort, and emotional dysfunction. Rather, the court finds that the objective medical record simply fails to document the existence of

15

any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears to the court that the ALJ properly considered all of the objective and subjective evidence in adjudicating Kirk's claim for benefits. It follows that all facets of the Commissioner's final decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted and Kirk's motion for remand must be denied.

The Clerk of Court is hereby directed to send a copy of this Memorandum Opinion and accompanying Order to all counsel of record.

**ENTER**: This 10th day of July, 2008.

Hon. Michael F. Urbanski
United States Magistrate Judge

16